533 A.2d 1311

**Niki HATZINICOLAS et al.**

v.

**Nicholas PROTOPAPAS et al.**

**No. 284, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Dec. 3, 1987.

Certiorari Granted March 30, 1988.

Gerard P. Uehlinger (Lentz, Hooper, Jacobs & Blevins, P.A., on brief), Baltimore, for appellants.

Robert J. Thieblot (Anne M. Hrehorovich and Allen, Thieblot & Alexander, on brief), Baltimore, for appellees.

Argued before GARRITY, BLOOM and ROBERT M. BELL, JJ.

BLOOM, Judge.

This appeal presents us with a question of first impression in this state: whether a minor child can maintain an action in tort against a business partner of her father for an alleged act of negligence committed in the operation of the partnership business. We hold that the action is barred by the still viable doctrine of parent-child immunity; therefore, we shall affirm the order of the Circuit Court for Baltimore City (Ward, J.) granting the partner's motion for summary judgment.

## Background

The appellants in this case, plaintiffs below, are Niki Hatzinicolas, a minor, and her mother, Evgenia Hatzinicolas, individually and as *prochein ami* for the minor. The

appellee is Nicholas Protopapas, who is a partner of the minor appellant's father, Michael Hatzinicolas, in the operation of a restaurant known as the Hopkins Carry–Out.

On December 4, 1984, while on the premises of the Hopkins Carry-Out, two-year-old Niki Hatzinicolas lost two fingers of her right hand when the hand got caught in the chain and gears of a food slicer.

Contending that the injury occurred because the metal safety guard of the slicer was not in place, enabling the child to gain access to the chain and gears, appellants filed suit in the Circuit Court for Baltimore City against appellee, Nicholas Protopapas, trading as Hopkins Carry–Out, Globe Slicing Machine, Inc., the manufacturer of the slicer, and Barry Kahn, the distributor of the slicer. The claim against appellee was for negligence; the claim against the manufacturer was for strict liability, for negligence, for breach of the implied warrant of merchantability and for breach of contract; and the claim against the distributor was also for breach of the implied warranty of merchantability and for breach of contract.

Appellee answered the complaint and also filed a request for an admission of facts, pursuant to Md.Rule 2–424, to establish that Niki's father and appellee were the sole partners in Hopkins Carry–Out. Appellants' failure to respond to the request for admissions within the required thirty days was deemed to constitute an admission of the partnership relationship between Niki's father and appellee. Md.Rule 2–424(b). Appellants have not challenged the admission; they openly admit that appellee and Michael Hatzinicolas are general partners in Hopkins Carry-out.

Based on this partnership relationship, appellee filed a motion for summary judgment, contending that the suit against him was barred by virtue of Maryland's adherence to the parent-child immunity doctrine. Judge Ward granted appellee's motion for summary judgment, issued his written order of summary judgment against appellant, and certified that judgment as a final judgment pursuant to Md.Rule

2–602, thus permitting this appeal to be brought despite the fact that appellants' claims against the other defendants are still unresolved.

## The Doctrine of Parent–Child Immunity

We note at the outset that the doctrine of parent-child immunity is alive and well in Maryland. *Frye v. Frye,* 305 Md. 542, 505 A.2d 826 (1986). Maryland recognizes only two exceptions to the general rule that a child cannot maintain an action in tort against his or her parent or that a parent cannot maintain an action in tort against his or her child. The first exception to the rule was set forth by the Court of Appeals in *Mahnke v. Moore,* 197 Md. 61, 77 A.2d 923 (1951), in which the Court held that a minor child had a right of action against her father for cruel and inhuman treatment or for malicious and wanton wrongs. The second exception was set forth by the Court of Appeals in *Waltzinger v. Birsner,* 212 Md. 107, 128 A.2d 617 (1957), in which the Court held that the doctrine of immunity is inapplicable when the child is emancipated. More specifically, *Waltzinger* held that a mother could maintain a suit against her adult son for injuries sustained in an accident caused by the alleged negligence of the son in the operation and control of an automobile. Neither of these exceptions, of course, are applicable to the case *sub judice.*

Even prior to *Frye v. Frye, supra,* this Court, although not always in agreement with the parent-child immunity rule, *see, Montz v. Mendaloff,* 40 Md.App. 220 at 226–29, 388 A.2d 568 (1978) (Gilbert, C.J., concurring), recognized the existence of the rule and has consistently adhered to it, rejecting all suggestions that we abrogate, alter or modify it. In *Latz v. Latz a/k/a Schafer,* 10 Md.App. 720, 272 A.2d 435, *cert. denied,* 261 Md. 726 (1971), we held that a suit by a father against a daughter for the daughter's negligent driving and death of the mother was barred by the parent-child immunity doctrine. In *Sanford v. Sanford,* 15 Md.App. 390, 290 A.2d 812 (1972), we held that a minor child's suit against his father for injuries he sustained from his father's negligent driving was barred by the doctrine.

In *Montz v. Mendaloff*, 40 Md.App. 220, 388 A.2d 568, *cert. denied*, 283 Md. 736 (1978), we held that the parent-child immunity barred a suit by a minor child against her parents for injuries sustained by the child as a result of the mother's negligent driving even though the negligence may have been gross. And in *Shell Oil Co. v. Ryckman*, 43 Md.App. 1, 403 A.2d 379 (1979), we declined to create an exception to the rule for claims arising when the parent and child are jointly engaged in a business activity. Finally, the Court of Appeals removed the last vestige of doubt as to the continued vitality of the doctrine in *Frye v. Frye, supra.*

Appellants present three arguments in support of their contention that the parent-child immunity doctrine should not be applied in this case. Their first argument is that the result of barring their action would fly in the face of the General Assembly's express concern for the protection of children's rights. By way of example, they cite Md.Cts. & Jud.Proc.Code Ann. § 5–201 (Repl.Vol.1984, Cum.Supp. 1987), which protects a minor's cause of action by tolling the statute of limitations during the minority of the child, and Md.Cts. & Jud.Proc.Code Ann. § 10–910 (Repl.Vol.1984, Cum.Supp.1987), which states that in an action by an infant for damages the negligence of a parent or custodian of the infant cannot be imputed to the infant so as to bar the infant's suit. From these examples they conclude that Maryland statutory and case law evidence a strong intent to protect children's rights against unrelated persons; therefore, they argue, appellants should be allowed to maintain an action against appellee because they are not related to him.

That argument, however, misses its mark in this instance. Appellants are not suing a person who is unrelated to them. They are asserting a claim against the business partner of the infant plaintiff's father based upon an alleged partnership tort. Because partners are jointly and severally liable for partnership torts, Md.Corps. & Ass'ns Code Ann. § 9–307 (Repl.Vol.1985), appellee would be able to demand contribution from the minor appellant's father should appellants be successful in their suit. *Phillips v. Cook*, 239 Md.

215, 210 A.2d 743 (1965). Therefore, appellants would be able to do indirectly what they could not do directly, that is, obtain damages in their suit against appellee that in the end would be payable in part by the injured child's father. That result would be inconsistent with the rationale of the parent-child immunity doctrine. *See, Stokes v. Association of Independent Taxi Operators, Inc.*, 248 Md. 690, 237 A.2d 762 (1968) (per curiam); *Riegger v. Bruton Brewing Co.*, 178 Md. 518, 16 A.2d 99 (1940).

Appellants' second argument is an interpretation of Md. Corps. & Ass'ns Code Ann. § 9–307, *supra*, and *Phillips v. Cook, supra*. Apparently disregarding the conjunctive nature of "and" in § 9–307, appellants state that "[s]everal liability means that an individual partner can be charged solely for the wrong." Appellants then buttress their assertion by stating that *Phillips* "held that an action could be maintained against other partners where the partnership auto was operated by one partner, provided the use of the vehicle was in the partnership's interest and for its benefit." To this they add, citing 60 Am.Jur.2d *Partnership*, § 162 (1972), that "there is ample authority that an aggrieved party in tort can sue the partnership or one or more of its members, and even single out for suit a partner who was not personally involved in the commission of the tort." Appellants thus conclude that appellee, as a non-parental partner, can be sued individually for the negligent act or omission of the partnership.

While we agree with all of those contentions, we note that appellants have failed to continue the analysis to its logical conclusion. Md.Corp. & Ass'ns Code Ann. § 9–307(1) states that "partners are liable jointly *and* severally...." Thus, if appellants were to obtain a judgment against the appellee as being *severally* liable for the partnership tort, the appellee would then have the right to demand contribution from the infant plaintiff's father because they are *jointly* as well as *severally* liable under § 9–307. A more thorough reading of *Phillips* would have alerted appellants to this joint liability, as evidenced by the following language in that opinion:

If the tortious act may reasonably be found to be done within the scope of the business of the partnership, the individual partner against whom judgment is obtained may have a right of contribution from the partnership *and from the other partners*, but that right does not limit the remedy of the plaintiff to proceed against the members of the partnership as individuals as well as co-partners.

*Phillips*, 239 Md. at 224, 210 A.2d 743. [Emphasis added.]

Appellants' third argument is to the effect that while there is no Maryland case directly on point the general rule elsewhere is that a minor can maintain an action against a parent's partner or partners for injuries arising in a business context. We note that several jurisdictions do permit such action. *See, e.g., Wayne–Oakland Bank v. Adam's Rib*, 48 Mich.App. 144, 210 N.W.2d 121 (1973); *Cody v. J.A. Dodds & Sons*, 252 Iowa 1394, 110 N.W.2d 255 (1961); *Signs v. Signs*, 156 Ohio St. 566, 103 N.E.2d 743 (1952); *Borst v. Borst*, 41 Wash.2d 642, 251 P.2d 149 (1952) (*en banc*). *Contra, Belleson v. Skilbeck*, 185 Minn. 537, 242 N.W. 1 (1932). Appellants rely heavily on the cases of *Felderhoff v. Felderhoff*, 473 S.W.2d 928 (Tex.1971), and *Hooper By and Through Hooper v. Clements Food Co.*, 694 P.2d 943 (Okla.1985), to support their argument.[1]

*Felderhoff v. Felderhoff*, 473 S.W.2d 928 (Tex.1971), was a case in which an unemancipated minor was injured by the negligence of his father, who was a partner in the firm which employed the minor plaintiff. The injured minor sued the partnership; the trial court granted summary judgment in favor of the partnership on the theory that the suit was barred by parent-child immunity; and the Supreme

---

**1.** We deal here with only the *Felderhoff* case because the *Hooper* case dealt with a defendant *corporation* in which plaintiff's father was employed when plaintiff sued the defendant corporation for her father's negligence committed within the scope of his employment. That is an entirely different problem from the one in the case *sub judice*.

Court of Texas reversed. The Texas Supreme Court noted that the purpose of the parent-child immunity rule is to protect harmonious family relationships. *Accord, Frye v. Frye, supra.* Recognizing that harmonious family relationships cannot be preserved directly by the courts, the Texas Court held that the most it could do was to prevent the judicial system from being used to disrupt "the wide sphere of reasonable discretion which is necessary in order for parents to properly exercise their responsibility to provide nurture, care, and discipline for their children." *Felderhoff*, 473 S.W.2d at 933. Hence, the parent-child immunity rule, according to the Texas Court, served to protect parental discretion in the exercise of parental duties. The Court held, however, that because the negligence complained of in *Felderhoff* occurred outside of a parental duty and in the conduct of business activities, the parent-child immunity doctrine did not apply. Thus, the Court carved out a business exception to the parent-child immunity rule.

*Felderhoff* is inapplicable to the case *sub judice* for two reasons. First, since the injured minor in this case was not employed by the appellee's partnership as was the plaintiff in *Felderhoff*, there is no business activity here to create a business exception. Second, even if the injured child had been employed by the appellee's partnership, we would still decline to create a business exception to parental immunity, as we so declined in *Shell Oil Co. v. Ryckman*, 43 Md.App. 1, 403 A.2d 379 (1979), for the reasons earlier stated in *Latz v. Latz, a/k/a Schafer, supra:*

The legislature in Maryland has been aware of the [parent-child] immunity under the *Schneider [v. Schneider*, 160 Md. 18, 152 A. 498 (1930)] decision for [57] years and has taken no action to change it. If there is a need for change let it come by legislative enactment so interested parties and the general public may first be heard and given an opportunity to express their views.

10 Md.App. at 734, 272 A.2d 435.

We believe the case of *Aboussie v. Aboussie*, 270 S.W.2d 636 (Tex.Civ.App.1954), rather than *Felderhoff*, applies to

this case. In *Aboussie,* a two-and-one-half-year-old child injured her hand in an electric fan which had been placed on the floor of a store. The child brought suit against the store, a partnership. The child's father was a partner in the store. The Texas Court held the partnership immune from the child's suit based upon the parent-child immunity rule. The Court stated that even though the father is in the partnership,

> ... the suit is necessarily against him as an individual. Minor daughter is arrayed in court against father. There are God-given ties of love, loyalty, and devotion between parents and children that do not exist between the children and other people. We do not think these ties should be cut asunder or endangered by permitting a minor unemancipated child to sue its parents for damages....

270 S.W.2d at 640 [2].

The appellants also argue that in the realm of business activities, because of liability insurance, parental immunity should be abrogated (at least to the extent of the insurance coverage) because the parent will ordinarily suffer no loss. This argument was foreclosed by the Court of Appeals in *Frye.* Confirming the continued existence of parental immunity in Maryland, the *Frye* Court held that the insurance argument was one to be made to the General Assembly should it wish to legislate in the area of parent-child immunity. 305 Md. at 563–67, 505 A.2d 826. This Court has also recognized that the existence of liability insurance would not affect the question on parent-child immunity, *Latz,* 10 Md.App. at 729, 272 A.2d 435, and we too deemed it appropriate for the Maryland General Assembly to decide the parental immunity issue. *Montz,* 40 Md.App. at 224, 388 A.2d 568. We reject appellants' insurance argument.

Finally, we think the reasoning of *David v. David,* 161 Md. 532, 157 A. 755 (1932), to be persuasive here. In

---

**2.** The holding in *Aboussie* was limited by *Felderhoff* to the extent that the Texas Supreme Court created a business exception to the parent-child immunity rule. *Felderhoff,* 473 S.W.2d at 933.

*David*, the plaintiff was injured on partnership property due to the partnership's negligence. The plaintiff sued the partnership. One of the partners in the firm was plaintiff's husband. The partnership asserted that the plaintiff's case was barred by virtue of the then viable, now defunct, interspousal immunity rule. *See, Boblitz v. Boblitz*, 296 Md. 242, 462 A.2d 506 (1983). The Court of Appeals agreed with the partnership and held plaintiff's suit barred.

Of importance in *David* is the Court's analysis of the partnership relationship. The Court stated that "it is ... well settled that [a partnership] is not [a legal] entity as is a natural person or a corporation, and that its status as an independent entity is limited and incomplete." *Id.* 161 Md. at 537, 157 A. 755. The Court further stated that "each partner is severally liable for the wrongful acts and omissions of the partnership, and that [each] is bound to contribute to his copartners his proportionate share of any sum advanced by them to satisfy an enforceable demand against it." *Id.* at 538, 157 A. 755.[3] The Court thus concluded that a judgment against the partnership was tantamount to obtaining a judgment directly against the husband. The Court stated that the "same dictates of public policy which have been held to preclude persons who stand in the relation of husband and wife from suing each other individually in tort would also prevent either of them from maintaining such an action against a partnership of which the other was a member...." *Id.* at 538, 157 A. 755.

Although that reasoning is no longer applicable to suits between spouses now that the doctrine of interspousal immunity has been abrogated by *Boblitz v. Boblitz, supra,* we believe that it continues to apply to suits between parent and minor child. The same dictates of public policy that preclude persons who stand in the relation of parent and

---

**3.** The *David* Court construed Md.Code Ann. art. 73A, *et seq.* Article 73A and its included sections were recodified without substantive change in 1976. 1975 Md.Laws Ch. 311, § 2. The recodified article 73A is now Title 9 of Md.Corps. and Ass'ns Code Ann.

child from suing each other individually in tort would also prevent either of them from maintaining such an action against a partnership of which the other is a member.[4] To hold otherwise would permit individuals to do indirectly what the law forbids them to do directly. The judgment of the circuit court is therefore affirmed.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.

---

4. We point out that the facts of this case fall squarely within the parent-child immunity doctrine because the injury to Niki Hatzinicolas was the direct result of an alleged negligence chargeable to the partnership entity.